The last case on our docket for the week is Safari Club International et al. as the plaintiff versus Scott De La Vega in this capacity as Secretary of the Department of Jessica Alloway Alloway thank you your honor yeah Jessica Alloway and also Jeremy Clare and for the appellees we've got Devin Devin McArdle good morning your honor I'm sorry to interrupt and also I don't know if I should say it now or later but appellees will be splitting their time with Miss Briggs on behalf of the interveners will be taking five minutes okay also right that's Miss Briggs on behalf of the interveners okay that was missing from why she will accept that why don't we proceed with the appellants thank you judge gold and may it please the court my name is Jesse Alloway and I am I am appearing on behalf of the state of Alaska I'd like to reserve five minutes for rebuttal and also be splitting five minutes of the opening comment time with counsel for Safari Club International the Kenai rule was unlawful for four Congress has clearly spoken on the issue of bear baiting the state does not concede that the service ever had this authority but to the extent it did Congress revoked that authority in 2017 when it passed the joint resolution disapproving of the statewide refuges rule second even prior to the enactment of the joint resolution the service lacked the authority to regulate the methods and means of hunting the services authority stems from Congress yes when in when it enacted in ILCA Congress granted the service the authority to conserve populations of brown bears by regulating where and when hunting may occur but Congress expressly would preserve the state's right to manage how hunting would occur third the Kenai rule was arbitrary and capricious brown bears on the Kenai Peninsula already have access to baiting stations there is no evidence in the record that baiting increases human bear conflicts or results in food condition bears what's more let's assume that the service is correct despite the Kenai rule black bear baiting still occurs on the Kenai refuge and the Kenai Peninsula in general and brown bears still have access to these bait stations so again if we assume that the service is correct and that baiting creates food conditions bears the federal agency has actually created a public safety concern by prohibiting hunters from taking the quote-unquote food condition bears that already visit these already existing bait stations and fourth the server service failed to comply with the procedural requirements of NEPA by failing to adequately explain its reliance on a categorical exclusion counsel for Safari Club International intends to address the NEPA arguments in his remarks so my focus today will be on the first three points and before moving on I'd also like to note that the state agrees with and supports the arguments of Safari Club International made regarding the Ski Lack Wildlife Recreation Area and the state is prepared to rest on its briefing on that issue but if the court has any questions I'm happy to answer them now well I have a question does your argument incorporate any deference to the agency's decision no your honor not with regard to the bear baiting provisions so the state recognizes that under Chevron the court would give reasonable deference to an agency's interpretation of law but not when Congress is clearly spoken on the issue and the state's argument is that in 2017 Congress clearly spoke on the issue when it said service you can't ban brown bear baiting on the refuge and then when you get to the state's arguments regarding in Milka and the methods and means of who has the discretion to manage the methods and means of hunting the service's interpretation of its regulation or Anoka is not reasonable your honor it goes no meaning to section 1314 a and all of the other compromises that Congress implemented through the enactment of Anoka Chevron different deference that I'm addressing is the deference to the expertise of the agency in administering the environmental laws our cases say that we're supposed to defer to their expertise in these technical matters sure your honor but I don't think in this particular instance that there is any the service really use any expertise so again you have the bear baiting provision Congress clearly spoke on that issue so even assuming the service had authority to say ban bear baiting because it believed that it was a necessary conservation concern Congress said no you don't have that authority council you only a curious about your argument that a resolution can overcome an environmental impact statement or assessment so what case says that Congress by resident because this resolution was not directed toward this particular action was it no your honor it was so so you're saying by implication this resolution could could nullify a regulation yes your honor so what case do you have to support the proposition that a congressional resolution can nullify an agency's regulation two points your honor we're going to the state relies on this court's recent decision in Center for Biological Diversity versus Bernhardt where this court directly addressed what that joint resolution would mean and I want to emphasize for the court that resolution has certain context to it but this is actually a law enacted by Congress it passed the house it passed the Senate and it was signed by the president of the United States so it's a law and then in Center for Biological Diversity this court looked at how that law was implemented and it was used it was implemented to the procedural statute in the Congressional Review Act in reviewing the Congressional Review Act this court said that that joint resolution which is a law substantively amended and no the Improvement Act as well as the National Wildlife Refuge Administration Act so does that I can but I also want to I mean to go back and answer your question a little bit in in more detail or to point out the provisions of the Congressional Review Act that I'm relying on your honor and I think the court's question is this also relates to it is what does the court do with the fact that that joint resolution was enacted after the Kenai rule and Congress never disapproved of the Kenai rule so I think in that situation you have to look at well does the court apply a new statute a new law to a pending case well and that was specifically is whether or not the regulation did so by implication sure your honor sure your honor so and I think the way that the court would look at this is by the framework that the Supreme Court set out in the land graph case and so what you would first do is you look at congressional intent and I don't think congressional intent was clear in this particular situation the joint resolution doesn't express any intent on Congress's part as to what it wants this court to do with priorly against your argument because if the joint resolution intended to nullify the regulation wouldn't it have said so explicitly no I don't think so your honor because that's simply not how the Congressional Review Act works so if you look at section 801 G and I think this directly answers your point section 801 G of the Congressional Review Act says we can't give any meaning to the fact that Congress didn't disapprove of the Kenai refuge rule that was a prior Congress it doesn't disapprove of it and that doesn't mean anything it doesn't mean that it agrees with the services interpretation and it doesn't mean that it disagrees with the services interpretation so the only other relevant provision of the Congressional Review Act is section 801 B and that tells us two things it says the statewide refuges rule is not going to take effect because Congress is disapproved of it through that enacted legislation and then it says the service cannot enact as reenact that rule or a substantially new rule and really what that means and what this court held in Center for Biological Diversity was that was Congress saying this is a substantive amendment to Anoka the Improvement Act and the National Wildlife Refuges Administration Act so that's a substantive amendment to the courts question is is well what do we do with that substantive amendment now that we have a case where the state is saying the service acted outside of its authority and that's where I think the Supreme Court's decision in Landgraf is instructive because the Supreme Court says without that congressional intent saying we only meant this to apply to future regulations you've applied the general rule and the general rule is the court applies the law as it currently exists today yeah if I could interject a question please sure so I I thought that the prior resolution just related to the the refuge rule that it doesn't by its terms say it would apply to any other rule relating to Alaska correct it doesn't bite so but you have to read it this that's my point your honors you have to read it in conjunction with what the Congressional Review Act says that resolution means as well as what this court said about that resolution and Center for Biological Diversity vs. Zinke vs. Zinke so Congress says we're disapproving of this this the statewide refuge rule service don't enact a rule again what does that mean that means and I think that rule was a blanket exclusion of the baiting in all of Alaska that's what was that's what the joint resolution prohibited well the statewide refuge rule did a number of things your honor it said that that the state couldn't implement predator control it said that the state couldn't implement a number of quote-unquote highly effective forms of hunting and the specific example or one of the specific examples that the statewide refuge will said in the state what said was bear baiting brown bear baiting the state you cannot implement that on the refuge point I was and it's a much broader ban than the rule that's at issue here sure it is a broader ban and I would concede that but again to give meaning to the Congressional Review Act which says the service can't implement a substantially similar rule you have to be able to look at what what that what the individual parts of the statewide refuge rules because otherwise if if you go with the interpretation that you're suggesting so the service can get around the implications in the Congressional Review Act by enacting these rules piecemeal and it will say well we didn't do all of this together it doesn't look like the statewide refuge rule we're gonna act one regulation that says you can't do predator control we're gonna enact a different regulation that you can't says that you can't ban bear baiting and then it can do that individual thing for each of the refuges in Alaska and accomplish the very same thing that it did through the statewide refuges rule I don't think that judge sure sure I will concede that point and maybe I made an assumption but I still think that that's an important point when this court is looking at statewide refuge rule in conjunction with the Congressional Review yeah thanks for your clarification now I have a question also then are you contending that the refuge rule yes as far as the bear baiting provision is concerned yes it's the same thing if you look at the statewide refuge rule the service says we're going to ban bear baiting on all refuges in Alaska because it's a highly effective form of hunting if you look at the Kenai rule it says we're going to ban brown bear baiting on the Kenai refuge because it's a highly effective form of hunting as far as the bear baiting provision is a substantially same rule and I think what the last point I kind of I would like to make on this particular issue is in the Center for biological diversity case the state and the service actually agreed on this particular topic your honors if you look at their brief on page 12 of its answering brief it argues to this court that quote together with the Congressional Review Act the joint resolution limits and effectively amends Congress's prior delegations of authority to interior concerning the management of national wildlife refuges and quote so in other words it was the services position in the Center for biological diversity that it used to have the authority to ban brown bear baiting but the joint resolution revoked that authority so to the extent it ever existed and again the state's not conceding that point it no longer exists as soon as Congress enacted those two that that joint resolution in 2017 council do you have any authority in a in a presidential case of the Supreme our circuit or any other circuit that says that a that when it comes to regulating what happens on federally on federal lands that a state's position can take primacy over effect over the responsible federal agencies position I don't think I have a case for you that says exactly that your honor but I think again the service can only act to the extent it's been grabbed and granted the authority by Congress so the state's position is that it would have to defer to the agency if the agency had that authority and this agency doesn't have that authority in this particular case in conjunction like I would I do want to point out that the state recognizes the service does have some authority when it comes to regulating wildlife on the Kenai refuge section 304 of Anoka grants the authority to the service to conserve the population of the species the state's argument is simply that in this particular case that authority that what's in the services to about to do that is not brown bear bedding it's to actually close the refuge to all forms of hunting but that would happen to have that would require a very high showing on the services part it would have to show a conservation concern and it's not conceding that that actually happened in this particular case yes your honor I see that I have eaten a lot of time so I'm going to rest unless the court has any further questions and give my Michael counsel from Safari Club some time thank you counsel oh good morning your honors Jeremy Claire for appellants Safari Club International as Miss Alloway indicated I will specifically address the NEPA claims there is a threshold question for those claims and that is do NEPA procedures apply federal appellees assert that no NEPA analysis was required for the relevant changes made in the Kenai rule because they maintain the environmental status quo but certainly the Fish and Wildlife Service thought that NEPA analysis was required and they effectively said so in the Kenai rule at 81 Fed Reg 27033 the rule conceded that NEPA applied when it cited a categorical exclusion applicable to the hunting and trapping provisions of the rule which included only the three provisions that Safari Club in the state challenged in the district court the service was not discussing the application of a categorical exclusion for the entire rule as federal appellees assert notwithstanding the services concession that NEPA applies the challenge provisions do do not maintain the status quo and NEPA procedures were required counsel your argument is a little bit confusing because it's a categorical exclusion part of the NEPA framework so that if NEPA applies and the categorical exclusion is properly applied in the NECA requirements have been satisfied well your honor you're hitting the nail on the head there and what I'm saying is that despite federal appellees assertions the Fish and Wildlife Service clearly thought that NEPA applies because they applied a categorical exclusion exactly so so if the categorical exclusion was properly applied then there is no NEPA violation correct that is correct your honor I we do not agree that the categorical exclusion was properly applied but that is a different question and I will get to that now if you'd like but in for that question the the district courts holding regarding the firearm discharge restriction is instructive to this courts consideration and as I mentioned the all three of the hunting and trapping provisions in the Kenai rule were addressed together by the by the Fish and Wildlife Service and the application of the categorical exclusion was insufficient and that the rule was also entirely silent regarding whether extraordinary circumstances apply which might exempt application of the categorical exclusion like whether the rule would be highly controversial and none of the parties appealed the district courts holding related to the firearm discharge restriction and so because the service combined its its discussion of the three restrictions in the rule this court should apply the same reasoning to find that the service but the district court didn't the district court did not apply that same analysis outside the consideration of the firearm regulation yes your honor the the district court found that NEPA did not apply at all to the other two provisions and so that's why there is that threshold question for these two provisions as to whether NEPA applies at all meaning whether the Fish and categorical exclusion or whether they could have been entirely silent on the matter and so that's that's the threshold question and in the district court the the judge cited to while National Wildlife Federation DSB and California DBLM but in SB in both of those the the courts found that the actions challenged were maintaining the status quo however the challenge provisions here are actions that result in a different environmental outcome then would have otherwise occurred if the provisions were not adopted does it matter if the district court erroneously found that NEPA did not apply if we are reviewing this her decision to Nova no it doesn't ultimately matter your honor but federal appellees maintain that NEPA does not apply to these to these two provisions in their appellate briefing so and and they they you know do cite to those cases as well which I think are distinguishable in the fact that again the the Fish and Wildlife Service had they not adopted the the two provisions the the environmental outcome would have been quite different on the ground and the Fish and Wildlife Service recognized that they were enacting those provisions to prevent different outcomes within the refuge for example and if I know I'm way over time so please just stop me if you want but the brown bear provision the state the harvest of brown bears over bait because they wanted a more effective method to sustainably reduce the historically high bear population and to address increasing human bear conflicts but by closing the refuge the service effectively split the Kenai Peninsula into two different areas with brown bear densities on and off the refuge whether hunters choose to hunt brown bears on or off the refuge more than answer my question so I think we should proceed with the Department of Interior's morning I'm Kevin McCardle on behalf of the Department of the Interior and made it please the court as I miss Briggs will be taking five minutes of time there's two central issues in the case the first is whether the services enactment of the challenge provisions of the Kenai rule was within the scope of this authority under a milka and the second is whether the services decision triggered the requirements of NEPA and with the courts permission I'd like to address each of those issues in turn on the authority question despite the extensive amount of briefing it really only comes down to one question did the service act within the scope of its delegated property clause authority under Anoka because you heard today from Miss Aloe and it's also clear from Alaska's reply brief that everyone agrees Congress delegated at least some of its property clause authority to the service when it directed the service and service alone to manage the refuge everyone also agrees that if the service is acting pursuant to that authority its action preempts any conflicting state laws so the only question for the court really needs to answer is whether in fact the service was acting within the scope of its authority under Anoka and there's no question that it was their earlier discussion focused on the brown bear baiting restriction so unless the court would like me to address the ski lack restrictions I'll focus on that one as well the service maintained the long-standing brown bear baiting prohibition in the refuge to conserve the brown bear population that's documented in detail at SCR 184 through 185 there's no question that that was a permissible exercise of the services delegated property clause authority under Anoka because section 303 mandates that the service has the top priority objective concern conserve fish and wildlife populations in the refuge without also requiring conformity to state law and it says down low at subsection 5 that the service shall also allow fish and wildlife recreation including hunting only to the extent it's consistent with the highest priority conservation mandate so the service had the requisite authority now the plaintiffs offer three contrary legal arguments but none of them has merit the first one is the plaintiffs point to a parenthetical contained in the services general regulations that says bear baiting prohibited and then in a parenthetical it says but it's allowed in Alaska in accordance with state law and they say that that's sort of a binding mandate on the service it can never do anything to prohibit baiting no matter what the consequences and that's not true and the basic reason the most basic is because it ignores the Alaska specific regulations it's true as a general matter not just with respect to baiting but to hunting generally that section 36.31 of the regulations hunting and every other recreational activity is subject to the state's to the services closure authority in section 36.42 which the service properly invoked here that section it's important it says the service can restrict an activity otherwise allowed so it contemplates a situation like this where you know you might have hunting under state law that's invoke its closure authority for resource protection or some other valid management consideration now Alaska argues it last acknowledges that the service has this authority what it says it'll service only has two options it can close the whole refuge to all brown bear hunting or it can impose seasonal restrictions and that's it that's not only not true it's conscious it would it would result in an unnecessarily unnecessary intrusion onto the state's the regulations in 36.31 and also in 36.42 state that the service can restrict an activity or close an area they don't impose any additional restrictions and if you accepted the serve if you accepted Alaska's position it would mean that even when a less severe restriction could accomplish the conservation could ensure consistency with the conservation mandate the service we had no option but to just close the whole refuge entirely to bear hunting that doesn't make any sense and it would result in unnecessary intrusions on state authority can also it's not do you agree with opposing counsel's position that deference has no place in our analysis of this regulation no not in the least certainly and I think your honor referring was referring before to deference this to the service's factual findings and certainly with respect to the service's conclusion that brown bear baiting in the refuge would lead to conservation concerns that's absolutely entitled deference there are detailed factual findings laid out in the rule and you know that's they fall squarely within the service's area of expertise and they're entitled to the traditional deference under the APA and I don't I don't think Alaska at least is really challenging that because they don't they and really focus on you know these legal arguments as to why the service supposedly doesn't have authority to restrict brown bear baiting and their last argument is this argument about the Congressional Review Act where they say that Congress's disapproval of the rhetoric of the refuges rule actually substantively amended Anilka to bar the service from prohibiting brown bear baiting and the simple answer there is that that argument is foreclosed by the CRA tells us exactly what the consequences of a joint resolution of disapproval it's and that's in section 801 a and 801 B it says the disapproved rule doesn't take effect and and the service cannot reissue the substantively the same rule now Alaska knows there's a problem there so it changed the statutory language in its presentation to say well it prohibits the service from implementing a substantially similar rule that's not what it says it's forward-looking statute it says it prohibits the service from reissuing the same rule in the future and since this case involves a pre-existing rule that predated the refuges rule the entire discussion of the CRA is irrelevant and also there's nothing in the joint resolution itself that supports Alaska's position because that terse resolution just says the refuges rule is disapproved and there's nothing in our brief filed in the other case and I would encourage the court to take a look at it in no way did we say that well the statute the joint resolution deprived the service of its authority to background bar certain hunting methods or to enforce the conservation mandate what we said there is what the same thing that this court said in CBDV Bernhardt which is though if there was a substantive amendment it was to bar the service from reissuing the same rule that's it consistent with the CRA so that entire line of argument just has no relevance to this case at all and there's no question that the service has delegated property clause authority to restrict brown bear baiting and just on that point before I move on the notion that the service's authority is capped into simply closing the whole refuge to brown bear baiting is also inconsistent with an ILCA section 304 B which says that service can only allow a use on the refuge which includes hunting to the extent to the extent it's compatible with the major purposes of the refuge which obviously include the primary conservation purpose and then it grants the service broad authority to issue regulations or terms and conditions as necessary and appropriate to ensure that activities remain consistent that's a broad delegation of rulemaking authority and this rule felt squarely within the scope of that authority and finally on the NEPA argument the service's decision to enact the challenge provisions of the rule didn't trigger the requirements of NEPA because it maintained the environmental status quo in the refuge and didn't and didn't change the level of human intervention I think the basic defect with the plaintiffs argument here is that Alaska changed course Alaska changed its management management objectives Alaska wanted more bears harvested Alaska tried to open the refuge to more hunting the service didn't change course the service maintained the status quo in the refuge under the existing plans the service does NEPA when it creates a plan it did NEPA in 2007 when it did a management plan for skill act nobody challenged that plan and that plan resulted in the hunting restrictions that are in effect today the service did a comprehensive EIS again in 2010 when it issued the current refuge management plan Alaska participated in that plan that plan ratified the skill act management plan with the existing restrictions and they didn't challenge that plan but then three years later Alaska says well now we want more hunting so we're gonna pass the regulation over the services objections opening up the area to these hunting that doesn't impose NEPA obligations on the federal government the federal government did nothing more than step in and say we're keeping things as they are under the current plans that were the subject of need and that decision changed nothing it didn't change anything inside the refuge and it didn't change anything outside of it the level of human intervention is exactly the same so under this courts decisions in kuchin I and SB it didn't trigger the requirements of NEPA and so for those reasons and the additional reason stated in our brief the district courts decision should be affirmed unless the court has any questions I'll turn the remainder of my time over to miss Briggs I have a question is the agency's position that NEPA does not apply or that the requirements of NEPA were met through application of the categorical exclusion what's your position it's both in the alternative these two provisions did not trigger the requirements of NEPA because they are state they maintain the status quo and didn't change the human the level of intervention in the refuge or outside of it at all isn't that the definition of categorical exclusion which is kind of a NEPA satisfaction of NEPA even though you don't have to go through all of the studies I'm confused as to why you would make the argument that NEPA does not apply sure your honor it's a good question let me see if I can clarify it because a CE is a form of NEPA compliance it's a different argument to say that it's covered by a CE so you know our initial position is that the challenge provisions of the rule don't trigger NEPA at all but even if they did we did a CE these two provisions clearly maintain essentially the same level of permitted use which is what the CE covers so they clearly fell under the CE but legally there are two distinct arguments one is NEPA doesn't apply at all and then two is even if it does we did a sufficient NEPA analysis in the form of the CE which is a form of NEPA compliance right but I don't understand I just don't get the argument of why NEPA would not apply at all I just I don't understand why you would make that argument and and what's the basis for that is there a case that says in this situation that NEPA does not apply yes we we think that there are the Kootenai case cited in our brief and the SB case now the Kootenai case came out the other way and it said that NEPA did apply but the principle that it announced is that NEPA applies whenever there is a change in the level of human intervention whenever the federal action that's critical here too the federal action causes the change well but I asked you do you have a case that says NEPA does not apply you thought you're pointing me to one where it says NEPA does apply do you have a case that says NEPA does not apply yes well in the Kootenai case the ultimate holding was that NEPA applied but the principle the principle okay my question is can you cite me to a case where the holding was that NEPA did not apply yes your honor I apologize it's it's the SB case would be an example so ownership of property or property interest was transferred from the federal government to a private entity and the plaintiffs argued well that triggers the requirements of NEPA and the court said no it doesn't because even though the entity that owns the property changed the nature of the use on the ground did not because the property was used for grazing and that is the the Ninth Circuit case that I would point to your honor and I would just say I totally understand your your point but in Kootenai there was a principle on it I understand your argument but I was asking you a specific question that Kootenai does not answer okay sorry your honor SB would be a thing so unless any additional questions from the court none for me judge zips no hearing none I think it's time to hear from Miss Briggs thanks very much thank you and good morning or good afternoon I suppose in San Francisco Rachel Briggs for the Alaska Wildlife Alliance I'd like to address some points regarding the Congressional Review Act today and then some points regarding the agency's authority under a NILCA and the Improvement Act contrary to the state's assertions Congress's action under the Congressional Review Act did not rewrite a NILCA or the Improvement Act to preclude the agency from regulating brown bear baiting rather as this court held and Center for Biological Diversity be Bernhardt the impact of that amendment was simply to deprive the refuges rule of any force and effect and obligate the service to execute the joint resolution in other words to strike this the refuges rule the text of the Congressional Review Act itself is quite clear that it's it's a narrow statute the effect of an action is simply to strike the rule at issue and preclude the agency from reissuing or issuing a new rule that's this court to reach back into the text of other statutes and reinterpret the text is beyond the invitation of the Congressional Review Act regarding the agency's authority the state cites to section 1314 a to argue that it has been preserved authority over methods and means of hunting however this is not section 1314 a preserves the state's existing authority over wildlife and as the state itself concedes in its reply brief under Indian community the state's authority granted at statehood over wildlife is exactly the same as that of every other state in other words state regulations may apply on federal lands until and unless they are preempted by the federal agency this is clarified by section 1314 B which directs federal agencies to manage federal lands like the refuge in accordance with Anilka and then section 1314 C which directs the agencies to manage in accordance with both state and federal law under federal law under Anilka the agency is directed to protect a natural diversity of animals including bears and wolves and under the Improvement Act it must protect biological integrity diversity and environmental health these directives encompass necessarily the ability to regulate hunting on the refuge the state also suggests that the agency is limited to only only limiting hunting for purposes of conservation however this is contrary to the language of Anilka the Improvement Act and the agency's regulations which also allow it to take action for purposes of public health or administration authority which is quite broad finally the state rests heavily on a distinction between methods and means of hunting on the one hand and closures to hunting on the other in distinguishing between its authority and the services however that distinction is not reflected in regulation or statutory text the provision of regulation at issue here 50 CFR 36.42 as counsel for the service noted specifies that the service can restrict an activity that would include an activity such as brown the only other authority that the state sites to for this distinction between methods and means and closures is section 1313 of Anilka which relates to the National Park Service's authority not the Fish and Wildlife Service's authority moreover that section does not limit the Park Service to only closing areas to hunting it also allows the Park Service to manage hunting in accordance with federal law and regulation again that necessarily includes the ability to take the lesser action of restricting a particular activity rather than closing the entire area to hunting for those reasons we would ask this court to uphold the Kenai rule and the district courts opinion are there other questions I can to the National Wildlife Federation vs. SB case I have it up now I want you to direct me to the language that says NEPA does not apply if you'll give me a minute your honor I'll try to pull that up if you were talking about page 1343 it says where proposed federal action would not change the status quo and EIS is not necessary it does not say that NEPA does not apply you're correct your honor and I interpreted that to mean that NEPA would not apply because the claim in the case was for yet that an EIS was required that's different than saying NEPA does not apply it says under NEPA no environmental impact statement is required so that's a totally different concept than saying NEPA does not apply at all okay fair enough your honor but I would say now this is just it's not the holding in Kootenai but that case if I'm remembering correctly now you have me doubting myself but I think the court said that NEPA does not apply where the federal action doesn't change the level of human intervention and in that case there was a reduction in the level of intervention so NEPA did apply but here there's no change whatsoever so that was our interpretation of the cases and the district courts I apologize I'm questioning your interpretation now too but I'll look at Kootenai and see if it says that as your honor if I wasn't clear about that that was my understanding of both of those cases okay well I think Ms. Alloway reserved some time well before we leave I'll just say Kootenai says the same thing that the SBK says that no environmental impact statement is required if there's no change in the status quo thank you judge Gould I I do think we used our time but if you would allow me a couple of minutes I'd really appreciate it okay we'll give you two minutes okay thank you I think the parties have exhausted the Congressional Review Act argument but I do want to make one point that I think illustrates the problems with the services position let's assume that the court agrees with the appellants and says NEPA does apply and the service didn't properly explain its application of a categorical exclusion and it remands the rule back to the agency I think the Congressional Review Act says the service can't reissue that rule because it's substantially the same as the statewide refuges rule that fair baiting provision is substantially the same and I think that illustrates really the heart of the state's position and why at least this was a substantive amendment to ANILCA and revoked some of the services authority I'd also like to address the the services position that there's no question it has this authority via the property costs there's there's definitely a question about that and the state raised this in the in its briefs if you look at both of the courts the Supreme Court's recent decisions in Sturgeon ANILCA was a series of compromises yes on one hand it's reserving a bunch of federal land and it's granting the service the authority to maintain that land in the populations of the species in its natural diversity but on the other hand the Congress set up what the Supreme Court said was an often conflicting goal of preserving the state's local ability to manage local decisions the hunting methods and means of hunting so the state's encourages the court to rely or look at section 1314 it sets up basically a division of labor section a says the state has the authority to manage methods and means of hunting or manage fish and wildlife which admittedly the state interprets as the methods and means of hunting section B section three says to take fish or wildlife on public lands you have to comply with state law the methods and means of hunting and federal law the services regulations pertaining to those public lands section C is not an additional grant of authority it's simply a recognition of the division of labor so with that your honor I thank you for the extra time yes you're four excellent presentations and all the advocates gave us a great deal of help in dealing with the difficult and intricate issues in a case such as this you know the case has high stakes for the people the rural impacts and also for other species we're present in Alaska so we will now submit a club international case and the parties will hear from the panel in due course and that concludes our arguments for today and with our thanks to all the advocates we'll conclude for the day in a journal
judges: GOULD, RAWLINSON, Zipps